UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

In RE:
    DARRIN R. DUNKIN    )    Case No. 14-13637-JDL
    PAMELA D. DUNKIN    )    Chapter 13
    Debtors    )

## MOTION FOR COURT APPROVAL OF LOAN MODIFICATION ON DEBTORS FIRST MORTGAGE, MOTION FOR ATTORNEY FEE COMPENSATION AND NOTICE OF OPPORTUNITY FOR HEARING

COMES NOW Darrin R. Dunkin and Pamela D. Dunkin the above named debtors, by and through their attorney, PHILIP A. HURTT, and pursuant to 11 U.S.C. Section 105 and files this Motion for Court Approval of Home Affordable Modification Agreement in regard to their first mortgage, and in support thereof, would show to the Court:

1. Debtor(s) filed a petition under Chapter 13 of the Bankruptcy Code on August 29, 2014.

2. That the Order Confirming Chapter 13 Plan was entered December 29, 2014.

3. That pursuant to the Confirmed Plan, Ocwen Loan Servicing, the First Mortgage Holder was to received $5,500 in arrearage payments with interest thereon at the contract rate of 8.37%, as well as the ongoing mortgage payment of $710.62 per month.

4. In about June 2016, Ocwen reached out to the debtors attorney to find out if the debtor might be interested in Home Affordable Loan Modification. A modification packet was prepared and mailed in to Ocwen. Attorney for the Debtors gave Ocwen permission to speak directly with the Debrors.

5. On November 18, 2016, Ocwen approved the Home Affordable Modification Agreement. Pursuant to the terms the debtors payment will reduce to $564.48 per month. The interest rate will reduce from 8.37% to 3.00%. Pursuant to the agreement all arrearages are rolled to the end of the note. A copy of the proposed Loan Modification is attached.

6. That Counsel for the Debtor, Philip A. Hurtt, be awarded $500.00 for the preparation and filing of this action to be paid through the Chapter 13 Plan.

## NOTICE OF OPPORTUNITY FOR HEARING

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than 21 days from the date of filing this request for relief. You should also serve a file stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice.

**The 21 day period includes the three (3) days allowed for mailig provided for in Bankruptcy Rule 9006 (f).**

Executed: December 16, 2016

/s/Philip A. Hurtt
PHILIP A. HURTT, OBA 16244
Branch & Hurtt Law Firm, P.C.
1525 SW 89th Street
Oklahoma City, OK 73159
(405) 634-7600 Telephone
(405)634-9306 Facsimile
lacristaoklaw@coxinet,net
*Attorney for the Debtors*

## CERTIFICATE OF SERVICE

This is to certify that on the ___16th___ day of December, 2016, a true and correct copy of the MOTION FOR COURT APPROVAL OF LOAN MODIFICATION ON DEBTORS FIRST MORTGAGE, MOTION FOR ATTORNEY FEE COMPENSATION AND NOTICE OF OPPORTUNITY FOR HEARING was mailed delivered using the CM/ECF filing system to the following:
John T. Hardeman, Chapter 13 Trustee, the US Trustee's Office and the following
First Fidelity; BANKRUPTCY@FIRST-FIDELITY.COM
Oklahoma Employee Credit Union; collections@oecu.org
Real Time Resolutions; bkdepartment@rtresolutions.com

I further certify that on the 16th day of December, 2016, a true and correct copy of the Motion was mailed by First Class Mail, postage prepaid, to the following:

Ocwen Loan Servicing; 12650 Ingenuity Drive, Orlando FL 32826;
Darrin and Pamela Dunkin; 2509 SW 81st Street, Oklahoma City, OK 73159
Oklahoma Employment Security Commission; PO Box 53039, Oklahoma City, OK 73132
Oklahoma Tax Commission Legal; 100 North Broadway, Suite 1500, OKC OK 73102
Bullcity Financial; 1107 W Maun Suite 201, Durham NC 27701
Cash King Loans #3, 9101 S Western Ave, OKC OK 73139
Convenient Loan; 25331 1h 10 West Suite 101, San Antonio TX 78257
Diagnostic Lab of OK, PO Box 676068, Dallas TX 75267
Kansas Counselors, 1421 N Saint Paul Street, Wichita KS 67203
National Bureau of Collections, PO Box 10718, MVC OK 73110
OU Medical Center, PO Box 740782, Cincinnati OH 45274
Royal Management, 25331 1h 10 West Suite 101, San Antonio TX 78257

/s/Philip A. Hurtt

Philip A. Hurtt

1-814-89633-0000037-001-07-000-001-000-000

Investor Loan#: 3113
Custodian ID: DC-00002
This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838



_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): Darrin Dunkin

Lender/Servicer or Agent for Lender/Servicer ("Lender"): Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 6/2/2006
Loan Number: 7090362299

Property Address ("Property"): 2509 Sw 81st St Oklahoma City, OK 73159

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, in the real property records of Oklahoma County, OK. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 2509 Sw 81st St Oklahoma City, OK 73159, which real property is more particularly described as follows.

The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.
**(Legal Description – Attached as Exhibit if Recording Agreement)**

1-814-89633-0000037-001-08-000-001-000-000

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future. However, I believe that I can presently afford to make the modified mortgage payments shown below.

    

    B. (i) The property has not been condemned; (ii) one of the borrowers signing this Agreement lives in the Property as a principal residence, or the Property is a rental property; and (iii) if the Property is a rental property, the certifications I have made concerning my intended use of the Property and the number of single-family properties that I own continue to be true and correct on the date hereof;

    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D. I have provided to Lender a Streamline HAMP Affidavit which attests to my qualification for the Home Affordable Modification Program ('Program').

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct and

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so and

    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. Time is of the essence under this Agreement.

    B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents and

    C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 11/01/2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The Loan Documents will be modified and the first modified payment will be due on 11/01/2016.

    A. The new Maturity Date will be: 8/1/2036.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $74,355.63 (the "New Principal Balance"). The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable) the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance" which will be $74,355.63. I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.



C. Interest at the rate of 3.00000% will begin to accrue on the Interest Bearing Principal Balance as of 10/01/2016 and the first new monthly payment on the Interest Bearing Principal will be due on 11/01/2016.

My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Maturity | 3.00000% | 10/1/2016 | $414.91 | $149.57, adjusts periodically | $564.48, adjusts periodically | 11/1/2016 | 238 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. The escrow payment amounts shown are based on current data and represent a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4  **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums,

assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan



Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall

not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property. 

J. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In the cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

N. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.O. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement. This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both me and Ocwen. This Modification constitutes the entire agreement between me and Ocwen and, supersedes all previous negotiations and discussions between me, Ocwen and/or Ocwen's predecessors in interest, and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

## Signature and Authorization Section

☐   If this box is checked, Borrower(s) signature must be notarized.

In Witness Whereof, the Servicer and I have executed this Agreement.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 4 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____   _November 18, 2016_ Date
Darrin Dunkin

State of OK
County of _Cleveland_

On _November 18, 2016_ before me, _Amy Hodnik_, personally appeared _Darrin Dunkin_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged before me that he/she executed the foregoing instrument in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of OK that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _Amy Hodnik_ (Seal)

Print Name _AMY HODNIK_

Commission expiration date _3/28/2020_

[AMY HODNIK — STATE OF OKLAHOMA — NOTARY PUBLIC seal]

Personally Known _____ OR Produced Identification _X_
Type of Identification Produced _Drivers License_

Servicer _____ By _____

Date _____

If applicable: _____
Mortgage Electronic Registration Systems, Inc. – Nominee for Lender